**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| ZAKARIA A. HASHIM, | * | |
| Plaintiff, | * | |
|  | * | |
| v. | * | Civil Action No. 12-cv-01892-AW |
|  | * | |
| AGENT NELSON-CLASH, *et al.* | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Pending before the Court are Defendants' Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment, Doc. No. 14, Plaintiff's Motion for Summary Judgment, Doc. No. 17, and Plaintiff's Motion for Default Judgment, Doc. No. 12. For the reasons articulated below, the Court will GRANT Defendants' Motion and DENY Plaintiff's Motions.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Zakaria Hashim, who is proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 and claims that Defendants Jeanette Nelson-Clash, Ronnie Coleman-Snow,[1] Christopher Todd, and Jennifer L. Brown, all agents with the Maryland Division of Parole and Probation, intentionally mishandled his supervision and caused him duress and harm in violation of the Eighth, Thirteenth, and Fourteenth Amendments.

#### A.   Background of Plaintiff's Probation Violations

On February 21, 2007, Judge Marielsa Bernard of the Circuit Court for Montgomery County sentenced Plaintiff to fourteen years beginning on September 19, 2006, with all but eight

---

[1] Plaintiff identifies Coleman-Snow as "Agent Snow" in his pleadings. *See* Doc. Nos. 1 and 7.

years suspended, for distribution of a controlled dangerous substance.  Doc. No. 14-3.  The court also placed Plaintiff on supervised probation for five years beginning upon his release from incarceration.  *Id.*; Doc. No. 14-13.  The Maryland Court of Special Appeals affirmed Plaintiff's conviction on August 4, 2008.  Doc. No. 14-17.

Plaintiff was paroled on July 14, 2009, and per the terms of his sentence, his supervised probation began as of that date.  Doc. Nos. 14-3, 14-4.  The conditions of probation required Plaintiff to "[r]eport as directed and follow [his] supervising agent's lawful instructions" and to "[g]et permission" before changing his home address or job or leaving the state of Maryland.  Doc. No. 14-13.  On January 23, 2012, Defendant Agent Todd asked the Circuit Court for Montgomery County to issue an arrest warrant for Plaintiff based on his failure to report when required and failure to notify his supervising agent of his new address in South Carolina.  Doc. No. 14-14.  The court issued a bench warrant for Plaintiff on February 13, 2012.  Doc. No. 14-10 at 44.  Plaintiff was arrested by authorities in South Carolina on February 17, 2012 and was subsequently returned to the state of Maryland.  Doc. No. 1 at 4; Doc. No. 7-5.

On April 30, 2012, Plaintiff appeared before the Circuit Court of Montgomery County and admitted that he had violated his probation.  Doc. No. 14-10 at 47–48.  Judge Bernard found Plaintiff in violation of probation and sentenced him to six years, all suspended except for the time he had already served from February 17, 2012 to April 30, 2012, and continued him on supervised probation.  *Id.* at 48.  On August 21, 2012, at Plaintiff's request, the court ordered his probation to be unsupervised.  Doc. No. 14-15.

B.   Background of Plaintiff's Parole Violations

As mentioned above, Plaintiff was paroled on July 14, 2009 with his parole term set to expire on August 22, 2014.[2]  Doc. Nos. 1, 14-4.  Similar to the terms of his probation, the conditions of Plaintiff's parole required him to "[r]eport as directed to and follow [his] Parole Agent's instructions" and to "[g]et permission" before changing his home or job or leaving the state of Maryland.  Doc. No. 14-4.  On January 23, 2012, the same day he requested a warrant from the Circuit Court, Agent Todd also requested that the Maryland Parole Commission issue a retake warrant for Plaintiff due to his failure to report to his supervising agent as instructed and failure to obtain permission to move to South Carolina.  Doc. No. 14-5.  The Commission issued the retake warrant the following day.  Doc. No. 14-6.  Plaintiff returned to Division of Corrections custody on April 30, 2012.  Doc. No. 14-7.  On May 7, 2012, Plaintiff admitted in writing to having violated the conditions of his parole.  Doc. No. 14-8.

On May 17, 2012, David Blumberg, Chairman of the Maryland Parole Commission, recalled the intake warrant for Plaintiff because he mistakenly believed that Plaintiff's underlying eight-year sentence had been reduced to time served.  Doc. No. 14-2 ¶ 5; Doc. No. 14-9.  In October 2012, however, Blumberg reviewed docket entries for Plaintiff's case and learned that the court had sentenced him to six years, with all but time served suspended, for violation of probation.  *Id.* ¶ 6.  Given that Plaintiff's parole case did not expire until August 22, 2014, Blumberg reopened the case.  *Id.* ¶¶ 6–7; Doc. No. 14-11.

Blumberg also abated Plaintiff's parole supervision because counsel for Defendants advised him that Plaintiff is now living in Virginia.  Doc. No. 14-2 ¶ 7.  Plaintiff advised this Court on October 12, 2012 that his new home address is in South Chesterfield, Virginia.  Doc.

---

[2] Although Plaintiff's eight-year sentence began to run on September 19, 2006, he was credited with 28 days for time served.  Doc. No. 14-3.

No. 13.  However, on November 1, 2012, Plaintiff wrote a letter to counsel for Defendants and Chairman Blumberg stating that his current address is in Lanham, Maryland.  Doc. No. 18-4.  Blumberg now believes that Plaintiff's parole supervision should be abated (*i.e.*, that his parole should not be supervised) due to the uncertain status of Plaintiff's living arrangements, the non-violent nature of his original crime, and the Circuit Court's August 21, 2012 decision that his probation be unsupervised.  Doc. No. 18-2 ¶ 11.

  C.  Plaintiff's Allegations

Plaintiff makes the following relevant allegations in his Complaint and Amended Complaint, which incorporates several exhibits by reference.[3]  When Plaintiff was paroled on July 14, 2009, he reported to the Glen Burnie Office of Parole and Probation and was assigned to Defendant Agent Nelson-Clash to be supervised.  Doc. No. 1 at 2.  At some point following his release from incarceration, Plaintiff worked at an auto parts store in Northwest Washington, D.C. until Defendant Agent Nelson-Clash informed him that he was not permitted to work outside Maryland.  *Id.* at 3.  Plaintiff also states that he enrolled in the University of Phoenix in October 2009 to help his employment situation and to help pay the parole supervision costs of $2,500.00.  *Id.*

On December 14, 2010, Plaintiff appeared before Judge Bernard of the Circuit Court of Montgomery County for a reconsideration hearing on Plaintiff's request that his probation be unsupervised.  *Id.* at 2.  Judge Bernard reserved her decision until she received a summary report from Plaintiff's supervising agent.  *Id.*  Plaintiff alleges that Agent Nelson-Clash "neglected to send a summary report to Judge Bernard after numerous attempts by the Plaintiff and his attorney."  *Id.*

---

[3] Plaintiff filed his Complaint in this case on June 25, 2012.  Doc. No. 1.  Plaintiff filed a "Supplemental Motion to Amend" on August 24, 2012, which included amended pleadings and attached exhibits.  Doc. No. 7.  Plaintiff's Motion was granted on September 28, 2012.  Doc. No. 10.

On March 2, 2011, Plaintiff wrote a letter to Judge Bernard stating that Agent Nelson-Clash was of the opinion that Plaintiff should not be unsupervised because he had failed to pay his parole supervision fees. Doc. No. 7-1. Plaintiff reiterated his request for unsupervised parole and probation because supervision limited his ability to find work outside the state of Maryland. *Id.* Plaintiff also stated that he was trying to relocate to South Carolina where his mother lived and that he had asked his attorney to work with Agent Nelson-Clash regarding his possible relocation. *Id.* Plaintiff sent a copy of this letter to Agent Nelson-Clash. Doc. No. 1 at 2. On March 7, 2011, Judge Bernard's administrative assistant sent Plaintiff a letter in response to his March 2 letter. Doc. No. 7-2. The March 7 letter to Plaintiff stated that Judge Bernard was not inclined to make a determination on whether his probation was to be supervised or unsupervised and that she would wait to hear from Agent Nelson-Clash.[4] *Id.* As of March 24, 2011, Plaintiff's motion for reconsideration remained held in abeyance. Doc. No. 1 at 2.

Plaintiff's supervision was thereafter transferred to Defendant Agent Coleman-Snow of the Glen Burnie Office of Parole and Probation. Plaintiff alleges that Agent Coleman-Snow also "neglected to respo[n]d to the Plaintiff and his attorneys' request for a summary report to Judge Bernard." *Id.* Plaintiff states that he mailed letters to Agents Nelson-Clash and Coleman-Snow regarding his status and attempted relocation to South Carolina, with copies to Judge Bernard.[5]

On August 22, 2011, Plaintiff sent Judge Bernard another letter in which he notified her that he had requested a transfer of his parole status to an address in Holly Hill, South Carolina. Doc. No. 1-1. Plaintiff stated that he was relocating due to circumstances out of his control and that he had asked his previous supervising agent, Agent Nelson-Clash, to transfer his paperwork

---

[4] Plaintiff left a copy of the letter for Nelson-Clash at her office on April 4, 2011. *See* Doc. No. 14-1 at 7; Doc. No. 14-16.
[5] Plaintiff does not attach any of these letters to his pleadings, and it is unclear whether he is referring to the March 2, 2011 letter he sent to Judge Bernard and Agent Nelson-Clash.

and information six months earlier. *Id.* In November 2011, Plaintiff's stepfather died suddenly in South Carolina. Doc. No. 1 at 3. Plaintiff notified Judge Bernard, his attorney, and Agent Coleman-Snow regarding the urgent need to transfer to South Carolina to help his mother and sister.[6] *Id.* Plaintiff also notified Agent Coleman-Snow of his South Carolina address and telephone number "before his resolve [sic] to relocate to South Carolina." *Id.*

In January 2012, Plaintiff's supervision was transferred to another agent of the Glen Burnie Office of Parole and Probation, Defendant Agent Todd. *Id.* By this time, Plaintiff had relocated to South Carolina, "leaving a trail concerning his whereabouts." *Id.* Based on Agent Todd's summary report regarding Plaintiff's probation violations, a warrant was issued on February 13, 2012 and Plaintiff was arrested in South Carolina on February 17, 2012. *Id.* at 4. Plaintiff does not dispute that he appeared before Judge Bernard on April 30, 2012, admitted to violating probation, and was sentenced to six years, all suspended except for the time served since his February 17, 2012 arrest. Doc. No. 7-10. The sentence also provided that Plaintiff was to continue on supervised probation. *Id.* Based on exhibits attached to his Amended Complaint, it appears that Plaintiff wrote multiple letters to Judge Bernard in June and July of 2012 requesting that his probation be unsupervised, despite his agent having told him that he was not eligible for unsupervised probation. Doc. Nos. 7-8, 7-9.[7]

Finally, in his Motion for Summary Judgment, Plaintiff argues that the Circuit Court's April 30, 2012 sentencing based on his probation violations "nullified" Plaintiff's original sentence which provided that parole was set to expire on August 22, 2014. Doc. No. 17 at 2. Accordingly, Plaintiff maintains that Chairman Blumberg's original assessment—that Plaintiff's

---

[6] Plaintiff cites the August 22, 2011 letter to Judge Bernard, even though this letter was dated approximately three months prior to his stepfather's death.

[7] As discussed above, the Circuit Court for Montgomery County eventually ordered that Plaintiff's probation would be unsupervised on August 21, 2012. Doc. No. 14-15.

underlying eight-year sentence had been reduced to time served—was correct, and that counsel for Defendants intentionally misled Blumberg into reopening Plaintiff's parole case. *Id.*

Plaintiff alleges that it has been a "continuous practice" of the Maryland Division of Parole and Probation to attack lower income individuals by creating disruption, chaos, and instability in their lives. Doc. No. 1 at 3. He also alleges that the Division of Parole and Probation intentionally denied him the opportunity to pursue his education, maintain employment, and support his family. *Id.* at 4. Plaintiff claims that the individual Defendants are liable for their inaction, the "abrupt disruption of his livelihood," and for intentionally mishandling his supervision and causing him harm and duress in violation of the Eighth, Thirteenth, and Fourteenth Amendments. *Id.* at 4; Doc. No. 7 at 1. Plaintiff seeks $250,000.00 in damages for lost income, assets, and pain and suffering he incurred due to Defendants' conduct. Doc. No. 1 at 4–5.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

7

conclusory statements, do not suffice." *Id.* at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of matters of public record, including prior judicial proceedings. *See, e.g.*, *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The Court may also consider documents attached to the Complaint "as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Okoli v. City of Balt.*, 648 F.3d 216, 231 (4th Cir. 2011) (quoting *Anderson*, 477 U.S. at 255).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if, after reviewing the record as a whole . . . a reasonable jury could return a verdict for [the non-moving party]." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his favor, a nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.   ANALYSIS

    A.   <u>Claims against the Maryland Division of Probation and Parole and Individual Defendants in their Official Capacities</u>

It is unclear from Plaintiff's Complaint whether he intended to sue the Maryland Division of Probation and Parole and the individual Defendants in their official capacities. The Court concludes, however, that Plaintiff cannot bring an action under 42 U.S.C. § 1983 against the state agency or the individual agents in their official capacity because they are not "persons" within

the meaning of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Accordingly, to the extent Plaintiff brings claims against the Maryland Division of Probation and Parole or the individual Defendants in their official capacity, the Court will dismiss such claims.

      B.    <u>Claims against Defendant Jennifer L. Brown in her Individual Capacity</u>

"In order for an individual to be liable under Section 1983, it must be affirmatively shown that the official acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotations omitted). Defendants "must have personal knowledge of and involvement in the alleged deprivation of [a plaintiff's] rights in order to be liable." *Id.* Although the Complaint lists Supervising Agent Brown in the caption, Plaintiff's pleadings are devoid of *any* specific, factual allegations regarding Agent Brown. The fact that Agent Brown is a supervising agent for the Maryland Division of Probation and Parole is of no consequence, as *respondeat superior* and vicarious liability do not attach under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Accordingly, Plaintiff's claims against Brown must be dismissed.

      C.    <u>Claims against Defendant Christopher Todd in his Individual Capacity</u>

Plaintiff's only specific allegation concerning Defendant Agent Todd is that Todd "submitted a parole/probation summary report to Judge Bernard and requested a warrant for the Plaintiffs' [sic] arrest." Doc. No. 1 at 3–4. Plaintiff does not dispute, however, that he was in violation of probation and parole for failing to report to his supervising agent as directed and for failing to obtain permission prior to moving to South Carolina. Plaintiff even admitted during his April 30, 2012 court hearing that he had violated the terms of his probation and admitted in

writing on May 7, 2012 that he had violated the terms of his parole.  Doc. No. 14-10 at 47–48; Doc. No. 14-8.

Where a Maryland court suspends an individual's sentence and orders supervised probation, the Maryland Division of Probation and Parole and its agents are statutorily required to "(1) supervise the conduct of the individual; (2) determine whether the individual is complying with the conditions of probation or suspension of sentence; and (3) report to the court on the individual's compliance."  MD. CODE, CORR. SERVS. § 6-111.  When Agent Todd informed the court that Plaintiff was in violation of his probation, a violation admitted by Plaintiff, he was merely performing his statutory duty under Maryland law.  Plaintiff has therefore failed to state a claim that Agent Todd deprived him of his constitutional rights, and the Court will dismiss the claims against Todd.

    D. <u>Claims against Defendants Jeanette Nelson-Clash and Ronnie Coleman-Snow in their Individual Capacities</u>

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States.  *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983).  In this case, Plaintiff alleges that Defendants deprived him of his rights under the Fourteenth, Thirteenth, and Eighth Amendments.

    1. <u>Fourteenth Amendment</u>

The Due Process Clause of the Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV § 1.  The Supreme Court has recognized that probationers have a liberty interest in remaining on probation, *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973), and that parolees have a liberty interest in remaining on parole, *Morrissey v. Brewer*, 408 U.S. 471, 481–82

(1972). Accordingly, the revocation of probation or parole requires that the affected individual be accorded due process. The minimum requirements of due process in the context of a parole revocation include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489. In *Gagnon*, the Supreme Court held that a probationer is entitled to the same due process protections when the State attempts to revoke his probation. 411 U.S. at 782.

The Circuit Court docket attached to Plaintiff's Amended Complaint shows that Plaintiff appeared in court with counsel on April 30, 2012, that he admitted to violating probation, and that Judge Bernard found him guilty of violating probation. Doc. No. 7-10. Plaintiff also does not dispute that on May 7, 2012, he admitted in writing to violating the terms of his parole. Doc. No. 14-8. Plaintiff has not specifically alleged that the procedures used in revoking his probation or parole deprived him of his due process rights. Rather, Plaintiff's constitutional claims are based on his allegations that Defendants Nelson-Clash and Coleman-Snow continuously neglected to provide summary reports to Judge Bernard while she held Plaintiff's request for unsupervised probation in abeyance. Doc. No. 1 at 2–3. There are several problems with Plaintiff's argument.

First, Plaintiff misapprehends the extent of his protected liberty interest. Although Plaintiff has a liberty interest in remaining on probation, he is not entitled to a particular level of probation or particular conditions of probation. In Maryland, sentencing courts are authorized to

place a defendant on probation "on the conditions that the court considers proper." MD. CODE, CRIM. PROC. § 6-221. The conditions "must be reasonable and have a rational basis," and they "must be clear, definite, and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement." *Douglas v. State*, 747 A.2d 752, 756 (Md. Ct. Spec. App. 2000) (citations omitted). Plaintiff does not allege that the conditions of his probation were unreasonable, irrational, or impossible to understand, but rather appears to insist that he was entitled to have unsupervised probation. There are simply no grounds for the Court to conclude, however, that Plaintiff's liberty interests include the right to unsupervised probation. *See Kaylor v. State*, 400 A.2d 419, 424 (Md. 1979) ("Probation is a matter of grace, not entitlement.").[8]

Second, accepting Plaintiff's claim that Defendants neglected to send the summary report to Judge Bernard, it is unlikely based on Plaintiff's Complaint and attached exhibits that Judge Bernard would have granted Plaintiff's motion for unsupervised probation even if she had received a summary report. Plaintiff acknowledged in a March 2, 2011 letter to Judge Bernard that Agent Nelson-Clash believed that Plaintiff should not be unsupervised because he had failed to pay parole supervision fees. Doc. No. 7-1. Accordingly, any summary report submitted to the Circuit Court in early 2011 would likely have recommended that Plaintiff continue on supervised probation.

Third, even accepting Plaintiff's speculative assertion that Judge Bernard would have granted his motion for unsupervised probation, a judicial order with respect to Plaintiff's probation would not have affected his *parole* status. *See, e.g.*, *Patuxent Inst. Bd. of Review v.*

---

[8] Furthermore, Plaintiff also fails to state a claim to the extent he argues that Defendants violated his due process rights by not facilitating a transfer of his supervision to South Carolina. The Interstate Compact for Adult Offender Supervision, adopted in Maryland, MD. CODE, CORR. SERVS. §§ 6-201 *et seq.*, does not create a federal right enforceable through a § 1983 cause of action. *See, e.g.*, *M.F. v. State of N.Y. Exec. Dep't Div. of Parole*, 640 F.3d 491, 494–97 (2d Cir. 2011).

*Hancock*, 620 A.2d 917, 929 (Md. 1993) ("[G]ranting parole is purely an executive function, . . . not a judicial one. Consequently, the judiciary cannot grant parole, its function is limited to granting probation.") (citations omitted); *see also* MD. CODE, CORR. SERVS. § 7-402(a)(1) ("On recommendation of the Division of Parole and Probation or on the Commission's own initiative, the Commission may modify the conditions of parole at any time for good cause."). Plaintiff has not alleged that he ever requested a modification of the conditions of his parole from the Parole Commission in 2010 or 2011 or that Agents Nelson-Clash or Coleman-Snow somehow inhibited the Parole Commission from modifying his parole terms. Regardless of Plaintiff's motion for unsupervised probation, Plaintiff was still required to abide by the conditions of his parole, and the Parole Commission acted within its statutory authority when it revoked Plaintiff's parole and subjected him to incarceration for moving to South Carolina without permission. Plaintiff has therefore failed to show that he suffered harm because of Defendants' actions.

Finally, to the extent Plaintiff claims that Defendants deprived him of his substantive due process rights, he has also failed to state a claim. "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)) (internal quotation marks omitted). The terms of Plaintiff's probation and parole and Defendants' failures to submit a summary report to Judge Bernard simply do not rise to a conscience-shocking level. Accordingly, Plaintiff has failed to allege that Defendants Nelson-Clash or Coleman-Snow deprived him of his rights under the Fourteenth Amendment.

2.   Thirteenth Amendment

The Thirteenth Amendment of the U.S. Constitution provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII.  "The plain intention [of the Amendment] was to abolish slavery of whatever name and form and all its badges and incidents; to render impossible any state of bondage; to make labor free, by prohibiting that control by which the personal service of one man is disposed of or coerced for another's benefit, which is the essence of involuntary servitude." *Bailey v. Alabama*, 219 U.S. 219, 241 (1911).  Plaintiff has failed to allege that Defendants subjected him to compulsory labor, and therefore, the Court will dismiss his Thirteenth Amendment claims.

3.   Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel or unusual punishments." U.S. CONST. amend. VIII.  The Cruel and Unusual Punishments Clause prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed," *Solem v. Helm*, 463 U.S. 277, 284 (1983), as well as "punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain," *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (internal quotations omitted).

Plaintiff has failed to state a colorable claim that Defendants deprived him of his rights under the Eighth Amendment.  As discussed above in the Fourteenth Amendment context, Plaintiff was not entitled to a sentence of unsupervised probation, and it is unlikely that his sentence would have been modified even if Agents Nelson-Clash or Coleman-Snow had submitted summary reports to Judge Bernard.  The fact that Plaintiff's probation was supervised

does not amount to a barbaric or disproportionate punishment, and Defendants' conduct can hardly be characterized as "wanton." Furthermore, following his conviction and during his sentence and status as a parolee and probationer, Plaintiff did not have the right to unfettered travel or to control where he lived. *See, e.g.*, *Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003) ("[P]arolees . . . have no right to control where they live in the United States; the right to travel is extinguished for the entire balance of their sentences."). Accordingly, Plaintiff's Eighth Amendment claims will be dismissed.

### E. Plaintiff's Motion for Summary Judgment

Because Plaintiff has failed to state any claim upon which relief can be granted, the Court will deny his Motion for Summary Judgment. Furthermore, Plaintiff's complaint that Chairman Blumberg reopened his parole case because counsel for Defendants intentionally provided misleading information has nothing to do with the Defendants named in Plaintiff's Complaint. Plaintiff has also presented no evidence that his original sentence was "nullified" by Judge Bernard's April 30, 2012 finding that he had violated the terms of his probation.[9]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment, is GRANTED, and Plaintiff's Motions for Summary Judgment and Default Judgment are DENIED.

A separate Order will follow.

__January 4, 2013__  
Date

/s/  
Alexander Williams, Jr.  
UNITED STATES DISTRICT JUDGE

---

[9] The Court will also deny Plaintiff's Motion for Default Judgment. Doc. No. 12. On September 28, 2012, the Court granted Defendants' unopposed Motion for an extension of time to respond to Plaintiff's Complaint up to and including October 29, 2012. Doc. No. 10. Defendants timely filed their Motion to Dismiss on October 26, 2012.